UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE:<br>　　　Christopher T. Shallow<br><br>　　　　　　　　Debtor | Chapter 7<br><br>Case No. 05-22323 |
| Anton Richard Sattler and<br>Sattler Builders and Decorating Co., Inc.<br><br>　　　　　　　Plaintiffs<br><br>　　　v.<br><br>Christopher T. Shallow<br><br>　　　　　　　Defendant | Adversary Proceeding<br><br>No. 06-2017 |

**APPEARANCES:**

Ellery E. Plotkin, Esq.
Law Offices of Ellery Plotkin
777 Summer Street, 2nd Floor, Stamford, CT 06901
Counsel for Plaintiffs

Gregory F. Arcaro, Esq.
Brown, Paindiris & Scott, LLP
2252 Main Street, Glastonbury, CT 06033
and
JoAnn C. Silvia, Esq.
Michalik, Bauer, Silvia & Ciccarillo, LLP
35 Pearl Street, Suite 300, New Britain, CT 06051
Counsel for Defendant - Debtor

---

**MEMORANDUM OF DECISION**

KRECHEVSKY, U.S.B.J.

I.

Anton Richard Sattler and Sattler Builders and Decorating Co., Inc. (together

"the plaintiffs"), the holders of secured, unsecured, and administrative claims totaling $311,193.03, on February 23, 2006, filed a complaint against Christopher T. Shallow ("the debtor"), the debtor in a Chapter 7 bankruptcy case commenced on July 13, 2005. The plaintiffs seek denial of the debtor's discharge pursuant to Bankruptcy Code §727(a)(3) (debtor's failure to keep records) and §727(a)(4)(A) (debtor's false oath). The complaint alleges that the debtor, under oath, failed to disclose: (1) that he had a beneficial interest in a 1987 Peugeot automobile ("the Peugeot"); (2) that, within the year preceding his petition, he repaid a $2,100 loan received from his brother; and (3) that, within the 90-day prepetition preference period, he transferred a storage shed and mechanical lift to a creditor in payment of a bill.

The court, on August 15, 2006, denied the parties' cross-motions for summary judgment, and, on January 26, 2007 held a hearing at which the parties presented testimonial and documentary evidence. Following the hearing, the parties filed memoranda of law and responsive memoranda.

II.

BACKGROUND

The debtor is a forty-two year old engineer who has been employed as such for twelve years by a large company. The debtor, until the end of 2004, had been living aboard his boat, moored at the Castle Marina in Chester, Connecticut called Castle Marina. Over the period from November 2003 through April 2005, the debtor was also self-employed, on a part-time basis, in the business of restoring wooden boats.

A.

About two months prior to his bankruptcy filing, the debtor moved his boat

from Castle Marina to another boatyard in Chester. At Castle Marina the debtor had kept, in addition to his boat, an 8' by 10' shed which he used for storage while he was living on the boat and a mechanical lift (a platform on wheels "that scissors up and down and it allows individuals to work on ... things that are high up"). (Tr. at 60.) At the time of the move, the debtor owed Castle Marina $1,376.44 for rent. He testified the shed and lift were "the two items I needed to get out of there before I left the marina, and [Bruce MacLeod ("MacLeod"), the owner of Castle Marina] suggested that I relinquish those two pieces, those two items to him. Both the shed and the man-lift." (Tr. at 59.)

The debtor and MacLeod agreed to the transfer in full satisfaction of the amount due. The debtor estimated that the storage shed, which he had purchased several years before for about $1,000, was worth $800; and that the lift, which the previous owner had given him, had no market value because of its unsafe condition. MacLeod valued the shed at about $1,000 and the lift $500. Both the debtor and MacLeod were thus satisfied with the $1,376.44 credit to the debtor's account.

B.

The debtor and his brothers Paul Shallow ("Paul") and Brian Shallow ("Brian") are triplets and have enjoyed a close relationship. In March 2005, when the premium for the insurance on the debtor's boat was due, the debtor had neither sufficient funds nor a credit card with sufficient credit available to pay it. Paul used his own credit card to pay the debtor's premium and the debtor repaid Paul sporadically over the next few months as he was able. Neither the debtor nor Paul documented the loan and its repayment. The debtor acknowledged that he did not indicate the transaction in

3

response to item (3) of his original bankruptcy petition, but denied that he did so with any fraudulent intent. He testified as follows:

> Q. At some point you had repaid the $2,000 loan, correct?
> A. Correct, yup.
> Q. And you didn't note that on your bankruptcy petition though, right?
> A. No, I did not.
> Q. Okay. And were you aware at the time that you were filing your bankruptcy petition that that was something that needed to be listed?
> A. I wasn't aware of that. To me my brother isn't a creditor. It's just my brother. He did me a favor because I did not have a credit card that had enough credit on it to pay the bill.
> Q. So the fact that it wasn't listed wasn't any kind of attempt to hide anything?
> A. Absolutely not. I was not trying to hide anything. I was not.
> ...
> Q. And you subsequently amended your petition to reflect the fact.
> A. Correct, yes.
> ...
> Q. When you said no to [the Trustee's question at the §341 meeting about payments to family members], were you attempting to deceive the Trustee in any way?
> A. Not at all. I had just forgotten about it. It was a personal loan from my brother, basically, and it was something that happened months before. I just forgot about it.

(Tr. 91-93.)

### C.

The debtor, in the early 1990's, had purchased the Peugeot from Brian. As of the petition date, title to the Peugeot was still in Brian's name. The Peugeot, for several years prepetition, was in the possession of the debtor's wife Helen ("Helen") who used it on a daily basis. As of the petition date, the 18 year old Peugeot had 310,000 miles on it and had broken down on several occasions due to problems with transmission lines, brakes, anti-lock brake system, and the mounts. Shortly after the debtor had filed his petition and was out of the country on business, the brakes failed on the Peugeot and Helen, fearing the vehicle was unsafe to drive, gave it to Paul. Helen,

4

postpetition, transferred the title from Brian to herself and the debtor jointly and then to Paul. Paul repaired the brakes, and subsequently sold the Peugeot for $500, which was less than he had spent on parts to repair it.

III.

## ARGUMENTS OF THE PARTIES

The plaintiffs claim that the debtor should be denied a discharge for making a false oath for not revealing, in his bankruptcy petition or at his §341 meeting of creditors, (1) the transfer of the shed and lift to Castle Marina, as required by item 10[1] of the statement of financial affairs ("the SOFA") in his bankruptcy petition, (2) the repayments to Paul in response to item 3(b)[2] of the SOFA, and (3) a beneficial interest in the 1987 Peugeot in his Schedule B (personal property). The debtor acknowledges that the transfer to Castle Marina and the repayment to Paul should have been included in his petition, but claims that the omissions were inadvertent oversights and that he had no fraudulent intent. The debtor, when questioned at his Rule 2004 examination by the plaintiffs' attorney, readily acknowledged both transactions, and

---

[1] Item 10 states, in relevant part:
List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case

[2] Item 3, "Payments to Creditors," states, in relevant part:
  a.    List all payments on loans, installment purchases of goods or services, and other debts, aggregating more than $600 to any creditor, made within 90days immediately preceding the commencement of this case....
  b.    List all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders....

5

thereafter amended his petition to reflect them.

The debtor testified that, as of the petition date, he did not consider himself the owner of the Peugeot since title had not been transferred to him from Brian. He contends that, even if he had a beneficial interest in the Peugeot, it would have had a negligible value, if any.

The debtor maintains that his lack of business records pertaining to the transactions at issue is justifiable in light of their informal nature, and that any lack of such records has not impeded the ability of creditors or the trustee to ascertain his financial condition or the circumstances involved.

## IV.

## DISCUSSION

Bankruptcy Code §727(a) provides, in relevant part:

(a) The court shall grant the debtor a discharge, unless–
. . .
(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case--
    (A) made a false oath or account; . . . .

Because denial of discharge is an "extreme penalty," the provisions of §727 are "construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." <u>State Bank of India v. Chalasani</u> (<u>In re Chalasani</u>), 92 F.3d 1300, 1310 (2d Cir. 1996) (citation and quotation marks omitted).

The plaintiff has the burden of proof in an adversary proceeding objecting to

discharge. Fed. R. Bankr. P. 4005. The standard of proof is the preponderance of the evidence. Wolfson v. Wolfson (In re Wolfson), 152 B.R. 830, 832 (S.D.N.Y. 1993). "Once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with the evidence, the burden thereafter shifts to the debtor to provide evidence to rebut the plaintiff's prima facie case. The plaintiff, however, always bears the ultimate burden of proving, by a preponderance of the evidence, the essential elements of an alleged objection to discharge." PaineWebber, Inc. v. Gollomp (In re Gollomp), 198 B.R. 433, 440 (S.D.N.Y. 1996).

### A.

### §727(a)(3)

Under §727(a)(3), "[t]he party objecting to discharge has the burden of proof to show that the debtor has failed to keep and maintain adequate books and records, and that such failure renders it impossible to discern the debtor's true financial condition and identify material business transactions." State Bank of India v. Sethi (In re Sethi), 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000) (citations omitted). "The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances." In re Underhill, 82 F.2d 258, 259-60 (2d Cir. 1936), cert. denied, 299 U.S. 546 (1936) (applying the corresponding provision under the former Bankruptcy Act). The evidence presented at the hearing included, in addition to the debtor's testimony, a copy of the bill from Castle Marina, deposition testimony from MacLeod that he and the debtor agreed to the transfer in satisfaction of the balance due,

7

testimony of Helen and Paul concerning the Peugeot, and Paul's testimony concerning his loan to the debtor and the payments received. The debtor's financial condition is readily ascertainable from the information provided, and the court concludes that, under the circumstances involved, the debtor was not required to keep written documentation to support such arrangements. The plaintiffs presented no evidence that written documentation of such transactions was customary or that the debtor's conduct was egregious. Sethi, 250 B.R. at 838.

### B.

### §727(a)(4)(A)

To support an objection to discharge pursuant to Bankruptcy Code §727(a)(4), the plaintiffs must prove that: (1) the debtor made the statement under oath; (2) such statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. See, e.g. Northeast Alliance Fed. Credit Union v. Garcia (In re Garcia), 260 B.R. 622, 631 (Bankr. D.Conn. 2001). "Statements made in a bankruptcy petition and/or schedules are covered by §727(a)(4) . . . . The objecting creditor must prove actual fraud. . . . A statement is not fraudulent within the meaning of the false statement exception to discharge simply because it is false. Knowingly and fraudulently means an intentional untruth in a matter material to the issue which is itself material." Id. (citations and quotation marks omitted).

The plaintiffs presented no evidence from which the court could infer that the debtor omitted any information with intent to defraud. The plaintiffs, in their memoranda, maintain that the debtor's conduct is indicative of a reckless disregard for

8

the seriousness of his obligations under the Bankruptcy Code. Although evidence of a "reckless indifference to the truth" or a "reckless and cavalier disregard for the truth" can be the equivalent of fraud, <u>Salomon v. Kaiser</u> (<u>In re Kaiser</u>), 722 F.2d 1574, 1583 n.4 (2d Cir. 1983), the court finds the debtor's explanations for the omissions credible and considered. The court concludes that the plaintiffs have not met their burden of proof on the element of fraudulent intent required for a denial of discharge under §727(a)(4)(A).

V.

## CONCLUSION

In accordance with the foregoing discussion, the court concludes that the plaintiffs' objection to the debtor's discharge is overruled and that the debtor is entitled to a discharge. Judgment shall so enter.

Dated at Hartford, Connecticut this 17 day of April, 2007.

_____
ROBERT L. KRECHEVSKY
UNITED STATES BANKRUPTCY JUDGE

9